UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| PINNACLE PIZZA COMPANY, INC., | ) | CIV.  04-4170-KES |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | PLAINTIFF'S MOTION TO |
| vs. | ) | AMEND PLEADINGS AND |
| | ) | GRANTING IN PART AND |
| LITTLE CAESAR ENTERPRISES, | ) | DENYING IN PART |
| INC., | ) | DEFENDANT'S MOTION FOR |
| | ) | JUDGMENT ON THE |
| Defendant. | ) | PLEADINGS |

Plaintiff, Pinnacle Pizza Company, Inc., sued defendant, Little Caesar

Enterprises, Inc., (LCE) for breach of contract and several other causes of

action related to the alleged misappropriation of an advertising slogan.

Pinnacle moves to amend its complaint: (1) to clarify its original complaint;

(2) to add LC Trademarks, Inc., and Ilitch Holdings, Inc., as co-defendants;

(3) to add a claim that LCE violated South Dakota franchise statutes; and

(4) to add a claim for cancellation of the LCE trademark on the phrase "Hot 'n

Ready."   LCE opposes the motion.  Plaintiff's motion for leave to amend is

granted.

LCE moves for judgment on the pleadings on all of Pinnacle's claims, as

amended, except the breach of contract claim.  LCE's motion for judgment on

the pleadings is granted in part and denied in part.

## MOTION TO AMEND PLEADINGS

Motions to amend are freely granted when justice so requires.  Fed. R. Civ. P. 15(a).  Leave to amend is denied only if evidence exists "such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

Pinnacle moves for leave to amend the complaint to add LC Trademarks, Inc. (LCT) as a defendant.  Pinnacle alleges that LCT holds trademarks that LCE uses, including the trademark in "Hot n' Ready."  LCE does not oppose the motion as to the claims that survive its motion for judgment on the pleadings.  Therefore, the motion is granted.

Pinnacle also moves for leave to add Ilitch Holdings, Inc. (IHI), as a defendant.  Pinnacle alleges that IHI owns or controls LCE and employs the management personnel responsible for the alleged misconduct at the heart of the case.  LCE contends that the proposed addition of IHI is futile because IHI does not own or control LCE.  LCE argues that even if IHI did control LCE, it would not be vicariously liable for the acts of LCE employees because it is a

separate corporate entity and there is no justification for piercing the corporate veil.

While there exists a presumption against piercing the corporate veil, a plaintiff should be given the opportunity to test its claim on the merits as long as the underlying facts or circumstances are a proper subject for relief.  See Foman, 371 U.S. at 182.  In this case, Pinnacle has alleged an alternative claim of unjust enrichment against LCE and IHI.  Because this is a proper subject for relief, and LCE has not shown that it would be prejudiced by the addition of IHI as a party, the motion for leave to amend to add IHI as a party defendant is granted.  LCE, IHI, and LCT shall hereinafter be referred to collectively as LCE.

LCE's only objection to the proposed amendments to the causes of action set forth in the complaint is that of futility.  As a result, the court grants Pinnacle's motion to amend the causes of action set forth in the complaint and will consider LCE's allegation of futility as part of the discussion on whether LCE is entitled to judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## BACKGROUND

According to the amended complaint, James Fischer and Mike Nichols formed Pinnacle in 1991 to operate three Little Caesars franchises in Sioux Falls, South Dakota.  Pinnacle entered into a franchise agreement with LCE, a

Michigan corporation.  Pinnacle alleges the contract grants LCE ownership over improvements or modifications of the Little Caesars system, but specifies that "in no event shall advertising created by Franchise Owner be considered to be an improvement or modification in the Little Caesar System."  Pinnacle contends that the contract recognizes its ownership interests in its original advertising materials in Section XII(B) of the contract.  This clause provides that "Little Caesar may not use the original advertising materials created by franchise owner without its prior written consent."

Fischer claims he created the advertising slogan "Hot n' Ready" while returning from a Little Caesars franchisee convention in 1997.  "Hot n' Ready" referred to a promotion that Fischer allegedly created, which offered a pre-cooked medium pepperoni pizza for $4.  Instead of waiting in the restaurant for the pizza to be cooked, or calling ahead to make sure that it would be ready when the customer arrived, the pizza was already cooked and ready to go when the customer entered Pinnacle's Little Caesars restaurants.

Pinnacle alleges that it began promoting "Hot n' Ready" pizzas in radio and newspaper advertisements on May 7, 1997.  Pinnacle added placards and traffic signs with the "Hot n' Ready" slogan to its ad campaign.  Pinnacle alleges that its sales increased dramatically on days it advertised "Hot n' Ready" pizzas.

4

Pinnacle alleges that LCE noticed the dramatic increase in sales at Pinnacle's franchises and began advertising "Hot n' Ready" pizzas at LCE's restaurants without obtaining Pinnacle's permission in violation of the franchise agreement.  Pinnacle alleges that LCE eventually required all 2,500 of its franchises to advertise "Hot n' Ready" pizzas.  As a result of the "Hot n' Ready" slogan, Little Caesars franchises have increased sales dramatically, while sales at other pizza chains have declined.  Pinnacle alleges that LCE secretly attributes its growth in revenue to the "Hot n' Ready" slogan.  In an effort to deceive its competitors and prevent them from imitating the campaign, LCE publicly reported that changes in its pizza recipe and new management techniques caused the increase in sales.

Pinnacle sued LCE for breach of contract, breach of its duty of good faith and fair dealing, conversion, misappropriation of an advertising idea, unjust enrichment, and imitation of trademark.  Pinnacle is seeking a money judgment, punitive damages, a statutory penalty of $100 for each wrongful use of its trademark, costs and attorney's fees, and other relief the court deems fair and equitable.  LCE moves for judgment on the pleadings pursuant to 28 U.S.C. § 12(c).

**STANDARD OF REVIEW**

The court considers a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) under the same standards as a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  See also Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 870 (8th Cir. 2002).  Rule 12(b)(6) requires the court to review only the pleadings to determine whether they state a claim upon which relief can be granted.  In considering a motion to dismiss, the court assumes all facts alleged in the complaint are true, construes the complaint liberally in the light most favorable to the plaintiff, and should dismiss only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief."  Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).  "The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 191, 104 S. Ct. 3012, 3017, 82 L. Ed. 2d 139 (1984).

## DISCUSSION

### I.    Choice of Laws

First, the court must determine whether the laws of Michigan or South Dakota apply.  LCE contends that Michigan law applies to all of Pinnacle's claims, while Pinnacle argues that South Dakota law applies.  In diversity

cases, federal courts apply the choice of law rules of the forum state to determine which state's substantive law applies.  Retail Associates, Inc. v. Macy's East, Inc., 245 F.3d 694, 697 (8th Cir. 2001).  Thus, the court will apply South Dakota's choice of law rules.

In South Dakota, parties may stipulate in a contract to the application of a particular state's law.  Dunes Hospitality, LLC v. Country Kitchen Int'l Inc., 623 N.W.2d 484, 488 (S.D. 2001).  The addendum to the franchise agreement provides in pertinent part:

> A.  The law regarding franchise registration, employment, covenants not to compete, and other matters of local concern will be governed by the laws of the State of South Dakota; but as to contractual and all other matters, this agreement and all provisions of this instrument will be and remain subject to the application, construction, enforcement and interpretation under the governing law of Michigan.

> B.  Any provision which designates jurisdiction or venue or requires the Franchise Owner to agree to jurisdiction or venue in a forum outside of South Dakota is void with respect to any cause of action which is otherwise enforceable in South Dakota.

Choice of law provisions, however, "are subject to limitation and invalidation by the overriding public policy of the forum state."  Id. (quotations omitted).  See also Wright-Moore Corp. v. Ricoh Corp., 908 F.2d 128, 132 (7th Cir. 1990) (choice of law provision violated public policy against allowing parties to contract out of the protections of Indiana franchise law). Declarations of South Dakota public policy are found in the constitution,

7

judicial decisions and statutes.  <u>State ex rel. Meierhenry v. Spiegel, Inc.</u>, 277 N.W.2d 298, 300 (S.D. 1979).  South Dakota franchise protection laws provide that "Any provision in a franchise agreement . . . requiring the application of the laws of another state is void with respect to a claim otherwise enforceable under this chapter."  SDLC 37-5A-51.1.

### A.  Contract Claims

The amended complaint alleges a cause of action for breach of contract.  Because Pinnacle's breach of contract claim is not a claim that is otherwise enforceable under SDCL ch. 37, the court finds that SDCL 37-5A-51.1 does not constitute overriding public policy of South Dakota sufficient to invalidate the forum selection clause of the franchise agreement regarding the breach of contract claim.

Pinnacle claims in the alternative that the "local concern" provision in the addendum to the franchise agreement supports application of South Dakota law to this claim.  The addendum also states, however, that Michigan law applies to contractual matters.  When provisions conflict in a contract and when full weight cannot be given to each, "a specific provision controls a general one."  <u>AFSCME v. Sioux Falls School Dist.</u>, 605 N.W.2d 811, 814 (S.D. 2000) (quoting <u>State v. Greger</u>, 559 N.W.2d 854, 864 (S.D. 1997).  Because the contract reference to contractual matters is more specific than a reference to matters of local concern, the court finds that the more specific provision

8

controls.  Thus, the court finds that Michigan law applies to the breach of contract claim.

Pinnacle also alleges a claim for breach of good faith and fair dealing. The South Dakota Supreme Court recognizes a claim for breach of the implied covenant of good faith and fair dealing, but not a new cause of action in tort. Garrett v. BankWest, Inc., 459 N.W.2d 833, 843 (S.D. 1990).  A claim for breach of an implied covenant of good faith and fair dealing has not been recognized by the Michigan courts, and is properly subject to dismissal.  Belle Isle Grill Corp. v. City of Detroit, 666 N.W.2d 271, 279 (Mich. App. 2003). Paragraph B of the addendum refers to voiding contract provisions which designate jurisdiction or venue "with respect to any cause of action which is otherwise enforceable in South Dakota."  The court seeks the parties' understanding of this contract provision before determining whether Michigan or South Dakota law applies.  Neither party briefed the effect of this contract provision with respect to the survival of a claim, such as the breach of good faith and fair dealing claim, which is enforceable only under South Dakota law.  Because it has not been addressed by the parties, the court directs the parties to brief this issue.

## B.  Claims for Violation of South Dakota Franchise Laws

Pinnacle alleges in its amended complaint that LCE violated South Dakota franchise laws, namely SDCL 37-5A-66(7) and 37-5A-83.   South

9

Dakota franchise protection laws provide that "Any provision in a franchise agreement . . . requiring the application of the laws of another state is void with respect to a claim otherwise enforceable under this chapter." SDLC 37-5A-51.1.  Pinnacle's claim for violations of the South Dakota franchise laws is a claim "otherwise enforceable under this chapter." See id. See also SDCL 37-5A-66(7), 37-5A-83.  Because the choice of law provision in the addendum contradicts South Dakota public policy as set forth in state law, the court will not enforce it.  Thus, the court finds that South Dakota law applies to this cause of action.

### C.    Tort Claims

Pinnacle alleges two tort claims, namely conversion and misappropriation.  Because both of these causes of action are preempted by federal copyright law, see infra, the court need not discuss whether South Dakota or Michigan law applies.

### D.    Unjust Enrichment

The choice of law provision in the contact provides that Michigan law applies to all causes of action except franchise registration, employment, covenants not to compete, or other matters of local concern. There is no overriding matter of South Dakota public policy that would override or invalidate this contract provision with regard to an unjust enrichment claim. In fact, both Michigan and South Dakota recognize a cause of action for

10

unjust enrichment and require the same measure of proof.  Under Michigan's cause of action for unjust enrichment, a plaintiff must prove that the defendant received a benefit from the plaintiff and that permitting the defendant to retain the benefit would result in inequity to the plaintiff.  Belle Isle Grill Corp., 666 N.W.2d at 279-80.  Under South Dakota's cause of action for unjust enrichment, a plaintiff must show: (1) that defendant received a benefit; (2) defendant was aware he was receiving a benefit, and (3) that it is inequitable to allow defendant to retain this benefit without paying for it.  Hofeldt v. Mehling, 658 N.W.2d 783, 788 (S.D. 2003).  Thus, the court finds that Michigan law applies to the unjust enrichment claim.

## II.    Preemption

Second, the court must determine whether Pinnacle's claims survive a motion for judgment on the pleadings after applying the appropriate state law.  LCE contends that the state-law conversion and misappropriation claims are preempted by federal copyright law.  "The Copyright Act provides the exclusive source of protection for 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 of the Copyright Act.'"  National Car Rental Sys., Inc. v. Computer Associates Int'l, Inc., 991 F.2d 426, 428 (8th Cir. 1993) (quoting 17 U.S.C. § 301).  A state-law cause of action is preempted if the work is within the subject matter as defined by §§ 102 and 103 of the Copyright Act, and the

11

state-law right is equivalent to any of the exclusive rights within the general

scope of copyright as defined in § 106.  Id.   This is known as the "subject

matter requirement" and the "general scope" or "equivalency requirement" in

preemption analysis.  See Stromback v. New Line Cinema, 384 F.3d 283, 300

(6th Cir. 2004).

### A.   Subject Matter Requirement

For this case, § 102 is the relevant statute defining the subject matter

that may be covered by the Copyright Act:

> (a) Copyright protection subsists, in accordance with this title, in
> original works of authorship fixed in any tangible medium of
> expression . . . from which they can be perceived, reproduced, or
> otherwise communicated, either directly or with the aid of a
> machine or device.  Works of authorship include . . . literary
> works [and] sound recordings.
>
> (b) In no case does copyright protection for an original work of
> authorship extend to any idea, procedure, process, system,
> method of operation, concept, principle, or discovery, regardless of
> the form in which it is described, explained, illustrated, or
> embodied in such work.

17 U.S.C. § 102.  Congress defines literary works as "works . . . expressed in

words, numbers, or other verbal or numerical symbols . . . regardless of the

nature of the material objects."  17 U.S.C. § 101.

"Advertisements are clearly copyrightable, although the appropriate

Section 102(a) category for such protection may vary, depending upon the

content."  1-2 Nimmer on Copyright § 2.08 [4].  Copyright law covers

commercial items including mundane advertisements.   American Direct

12

Marketing, Inc. v. Azad Int'l, Inc., 783 F. Supp. 84, 87 (E.D.N.Y. 1992).  Ideas

may not be copyrighted.  17 U.S.C. § 102.  Slogans are not subject to

copyright.  37 C.F.R. § 202.1.  "Items otherwise copyrightable will not be

denied copyright simply because of their advertising purpose, but they do not

gain any greater protection than non-advertising materials." Fabrica Inc. v. El

Dorado Corp., 697 F.2d 890, 894 (9th Cir. 1983).  In order to be protected by

copyright, the advertising must still fall within one of the areas of

copyrightable subject matter designated in 17 U.S.C. § 102.  Id.

Several circuit courts have held that the Copyright Act may preempt a

state law cause of action even when the subject matter at issue would not be

copyrightable.  See Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 455 (6th Cir.

2001) (inclusion of uncopyrightable expressions within copyrightable material

does not remove the work from the subject matter of copyright); National

Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 849-850 (2d Cir. 1997)

(holding that subject matter of copyright under § 301 includes

"uncopyrightable" as well as "copyrightable" elements); United States ex rel.

Berge v. Board of Trustees of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir.

1997) (finding that "scope and protection are not synonyms," and holding that

uncopyrightable ideas that make up copyrightable works are within subject

matter of copyright); ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1453 (7th Cir.

1996)(finding that uncopyrightable data underlying a copyrightable computer

program are within subject matter of copyright).  In other words, "the shadow actually cast by the Act's preemption is notably broader than the wing of its protection."  Berge, 104 F.3d at 1463.  The Eighth Circuit Court of Appeals has not ruled on the issue.[1]

"Copyrightable material often contains uncopyrightable elements within it, but § 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements."  National Basketball Ass'n, 105 F.3d at 849.  For example, the fact that portions of a book may consist of uncopyrightable material does not take the work as a whole outside the subject matter of the act.  Id. (citing Harper & Row Publishers, Inc. v. Nation Enterprises, 723 F.2d 195, 200 (1983) rev'd on other grounds, 471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985).  "Were this not so, states would be free to expand the perimeters of copyright protection to their own liking, on the ground that preemption would be no bar to state protection of material not meeting federal statutory standards."  Id.  See also Murray Hill Publications, Inc. v. ABC Communications, Inc., 264 F.3d 622, 637 (6th Cir. 2001) (finding

---

[1]In Hartman v. Hallmark Cards, Inc., the court held that § 301 of the Copyright Act preempted a common law misappropriation claim because it was a mere reformulation of the plaintiff's failed copyright claim.  833 F.2d 117, 121 (8th Cir. 1987).  In that case, however, the subject matter was a script covered by the Copyright Act.  Id. at 120.

Copyright Act preempted conversion claim involving unoriginal line in movie, even though line was not eligible for copyright protection).

Section 301 is intended to create a uniform method of enforcing and protecting intellectual property rights by preempting state law claims.  Daboub v. Gibbons, 42 F.3d 285, 288 (5th Cir. 1995).  The House Report states:

> The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of the Federal copyright law.  The declaration of this principle in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable interpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection.

Id. at 290 n.8 (citing Notes of Comm. on the Judiciary, House Report No. 94-1476).  Congress can only accomplish its goals if the "subject matter of copyright" includes all works of a type covered by § 102, even if federal law does not copyright that particular item.  ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1453 (7th Cir. 1996); cf. Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 156, 109 S. Ct. 971, 103 L. Ed. 2d 118 (1989) (holding that same principle applies in patent law.)

Pinnacle contends that no part of "Hot n' Ready" is copyrightable, and therefore, its claims survive preemption.  Pinnacle urges the court to follow the approach adopted by the Eleventh Circuit Court of Appeals, which held that for purposes of preemption analysis, the subject matter of copyright only

15

includes materials that are substantively qualified for copyright protection. Dunlap v. G & L Holding Group, Inc. 381 F.3d 1285, 1295 (11th Cir. 2004).

In Dunlap, the appellant had filed a conversion claim against his former employer, alleging that it stole his idea for a gay and lesbian online bank. Id. at 1288. The district court granted partial summary judgment in favor of the defendant and found that Dunlap's claim was preempted by the Copyright Act. Id. at 1289. The Court of Appeals reversed and held that because ideas may not be copyrighted, a conversion claim alleging theft of an idea is not preempted. Id. at 1295. The court noted that "the assertion that an element which is not protected by copyright is included in the subject matter of copyright is completely illogical." Id. If the Dunlap case had involved more than just the theft an idea, however, the conversion claim would have been preempted. "Where a work of original authorship embraces more than simply an idea, preemption would be appropriate. But where, as here, there is no work that is claimed to have been pirated—only an idea which lends itself to very few expressions—there is merger and no preemption." Id. (Emphasis in original).

Pinnacle has been advertising "Hot n' Ready" pizzas in newspapers, leaflets, radio spots, and banners since May 1997. Pinnacle's complaint refers to the subject of this case as advertising, an idea or concept, and a slogan. At oral argument, Pinnacle described "Hot n' Ready" as advertising, an idea, and a

16

slogan protected by trademark law instead of the Copyright Act.  Tr. 39-41.  In its amended complaint Pinnacle alleges LCE violated Section XII(B) of the Franchise Agreement, which provides that "Little Caesar may not use the original advertising materials created by Franchise Owner without its prior written consent."  Pl. Am. Compl. at 4.

Unlike the plaintiff in Dunlap, Pinnacle's claim involves both copyrightable materials, such as newspaper ads, flyers and radio ads, not just an uncopyrightable slogan or idea.  Because of the presence of copyrightable materials, this case is similar to cases involving conversion of non-copyrightable portions of copyrightable materials in which the courts have found the state-law claims are preempted because they were within the subject matter of the Copyright Act.  See, e.g., Murray Hill, 264 F.3d at 637, Harper & Row, 723 F.2d at 200.  As long as a work fits within the general subject matter of §§ 102 and 103, the Act prevents the states from protecting it even if it fails to achieve federal statutory copyright because it is too minimal or lacking in originality to qualify.  Dunlap, 381 F.3d at 1296.  In light of the persuasive authority cited above, the court finds that Pinnacle's state-law claims alleging conversion and misappropriation are within the "subject matter" of the Copyright Act.

### B.    Equivalency Requirement

Courts analyze equivalency by applying a functional test to determine whether the state-law claim is equivalent to any of the exclusive rights granted to copyright holders in § 106.  Strombeck, 384 F.3d at 301 (citing Data General Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1164 (1ˢᵗ Cir. 1994).  Section 106 gives the copyright owner "exclusive rights to do and to authorize" reproduction of copyrighted works or the preparation of derivative materials from them. 17 U.S.C. § 106.   This includes the right to refuse to license the exploitation of its work.  Orson, Inc. v. Miramax Film Corp., 189 F.3d 377, 385 (3ᵈ Cir. 1999).  To avoid preemption, the state law action must include an extra element "beyond mere reproduction or the like."  National Car Rental, Inc., 991 F.2d at 431.  The extra element must change the nature, rather than the scope, of the action.  Stromback v. New Line Cinema, 384 F.3d 283, 301 (6ᵗʰ Cir. 2004).

### 1.    Misappropriation

Pinnacle alleges that LCE misappropriated its property interest in its "Hot n' Ready" advertising promotion.  Pinnacle alleges that it developed the advertising promotion with its time, money and skill, creating a property right, that LCE gained an unfair advantage and have wrongfully benefited from Pinnacle's toil, and that LCE damaged Pinnacle by wrongly appropriating the property.

18

Courts faced with similar misappropriation claims have routinely found them preempted by the Copyright Act because they allege an act that infringes upon one of the exclusive rights granted by § 106.   Stromback, 384 F.3d at 302.  See also 1 Nimmer § 1.01[B][1][f][iii] ("Except for a few stray rulings, legions of cases . . . have held preempted claims for misappropriation") (citations omitted).  Applying Michigan law, the Sixth Circuit Court of Appeals in Strombeck held that the federal Copyright Act preempted a commercial misappropriation claim.  Id.  Similarly, the Eighth Circuit Court of Appeals found that a state-law misappropriation claim is preempted by federal law. See Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 121 (8th Cir. 1987).  While a misappropriation claim would survive preemption if it alleged an extra element, such as a confidential or fiduciary relationship, see Stromback, 384 F.3d at 302, Pinnacle's claim does not make such an allegation.  Therefore, this claim is preempted.

### 2. Conversion

Pinnacle alleges LCE committed the tort of conversion by exercising control and dominion over Pinnacle's property right in its "Hot n' Ready" advertising campaign.  It alleges that the franchise agreement gave Pinnacle ownership of its local advertising.  Pinnacle further alleges that LCE used the converted property to earn millions of dollars, and that Pinnacle is entitled to recover all the profits that LCE earned from the alleged conversion.  Under

19

Michigan law, conversion is "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." <u>Foremost Ins. Co. v. Allstate Ins. Co.</u>, 486 N.W.2d 600, 606 (Mich. 1992).  Under South Dakota law, conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right. <u>Ward v. Lange</u>, 553 N.W.2d 246 (S.D. 1996).

Pinnacle has not alleged a violation of an additional element that would distinguish a state law conversion claim from a federal copyright action. <u>See</u> <u>Murray Hill</u>, 264 F.3d at 637 (holding Michigan conversion claim preempted by federal Copyright Act because plaintiff would not have to prove anything beyond violation of copyright law).  As in Pinnacle's misappropriation claim, the alleged conversion would infringe the exclusive rights protected by § 106 of the Copyright Act. <u>See id.</u>  Because it has failed to allege an extra element and its conversion claim falls within the subject matter of the Act, the court finds that Pinnacle's conversion claim is preempted.

## III.   Other Claims

### A.   Breach of Duty of Good Faith and Fair Dealing

Pinnacle alleges that LCE breached its duty of good faith and fair dealing.  LCE contends that the claim must be dismissed unless Pinnacle can show that it was completely denied the benefit of the bargain by LCE's bad

faith.  A claim for breach of an implied covenant of good faith and fair dealing has not been recognized by the Michigan courts, and is properly subject to dismissal.  <u>Belle Isle Grill Corp.</u>, 666 N.W.2d at 279.  The court reserves ruling on whether this claim should be dismissed until it receives additional briefing from the parties on the choice of laws issue in section I.A.

      **B.**     **Unjust Enrichment**

      Pinnacle has alleged LCE was unjustly enriched when it stole Pinnacle's advertising campaign.  LCE argues that the claim must be dismissed because the parties had an express contract that addresses the advertising issue.  "However, a contract cannot be implied in law while an express contract covering the same subject matter is in force between the parties."  <u>H.J. Tucker & Assoc. v. Allied Chucker & Eng'g Co.</u>, 595 N.W.2d 176 (Mich. App. 1999).  When a written contract between the parties does not directly address the circumstances presented, however, an unjust enrichment claim may proceed and it is error to dismiss such a claim.  <u>Rozenberg v. Retrieval Methods, Inc.</u>, 2002 WL 31297307 (Mich. App. 2002).

      Pinnacle also contends its unjust enrichment claim was pleaded as an alternative to its breach of contract theory.  A party may plead for relief in the alternative, and may state separate claims "regardless of consistency."  <u>See</u> Fed. R. Civ. P. 8(a), Fed. R. Civ. P. 8(e).  Applying the laws of Pennsylvania, Ohio, and Arkansas, plaintiffs were permitted to plead unjust enrichment

despite the existence of an express contract.  See Robinson v. Berwind

Financial, L.P., 2004 WL 67867, * 5-6 (Pa. Com. Pl. 2004); Resource Title

Agency, Inc. v. Morreale Real Estate Services, Inc., 314 F. Supp. 2d 763, 772

(N.D. Ohio 2004); United States v. Applied Pharmacy Consultants, Inc., 182

F.3d 603, 609 (8th Cir. 1999).  The court finds these cases persuasive.

Because Pinnacle may be entitled to relief under an unjust enrichment theory

either if the contract does not directly address the circumstances or if it is

plead in the alternative, the motion for judgment on the pleadings on the

unjust enrichment claim is denied.

### C.    Imitation of Trademark

Pinnacle alleges LCE  "intentionally and willfully used its mark as

defined by South Dakota statute on a number of occasions without

permission."  Pl. Am. Compl. at 15.   SDCL 37-6-3 provides a civil cause of

action for trademark violations:

> Every person who, with intent to defraud, affixes to any goods, or
> to any container of goods, any label, stamp, brand, imprint,
> printed wrapper, ticket, or mark, which designates such goods by
> any word or token which is wholly or in part the same to the eye
> or to the ear as the word or any of the words or tokens used by
> any other person as his trade-mark . . . is liable to the party
> aggrieved in the penal sum of one hundred dollars for each and
> every offense, to be recovered by him in a civil action.

SDCL 37-6-3.

LCE contends that the claim must be dismissed as a matter of law

because Pinnacle cannot satisfy the prima facie elements of a trademark

imitation cause of action.  The court finds, however, that Pinnacle has sufficiently put LCE on notice of its claim for imitation of trademark in violation of SDCL Ch. 37-6 and has alleged sufficient facts to survive a motion for judgment as a matter of law.

### D.   Violations of the South Dakota Franchise Act

Pinnacle alleges that LCE violated the South Dakota Franchise Act by dealing in a manner that was unfair and inequitable to Pinnacle, and that it has a private right of action to enforce the Act.  LCE contends that the proposed claim is futile because the Act does not provide a private right of action for allegations of unfair and inequitable treatment.

SDCL 37-5A-66(7) authorizes the director of the division of securities to issue a cease and desist order or an order denying, suspending or revoking registration if he finds "the operation of the business of the franchisor . . . or any <u>practice</u> of the franchisor is or would be <u>unfair or inequitable</u> to franchisees" (emphasis added).  SDCL 37-5A-51 authorizes an injunction against any person who engages in unfair or inequitable practices in contravention of the rules of the director.  A private right of action to sue for damages or rescission on behalf of a franchisee or subfranchisee is recognized in SDCL 37-5A-83 against any "person who violates any provision of §§ 37-5A-1 to 37-5A-50, inclusive, and 37-5A-52 to 37-5A-86, inclusive, or any rule or order thereunder[.]"  Thus, 37-5A-66(7) is expressly included in the private

23

right of action provision and 37-5A-51 is expressly excluded from the private right of action provision.

LCE contends that the legislature merely authorized the director to issue orders, but that the Act does not allow a party to sue where the director has not issued an order.  Because the South Dakota Supreme Court has not had an opportunity to address this issue, this court will apply the normal principles of statutory interpretation to determine the legislature's intent.  By its plain language, SDCL 37-5A-83 applies to any statutory violation, <u>or</u> rule, <u>or</u> order thereunder.  The statutory construction rules recognized by the South Dakota Supreme Court make clear that "in its ordinary sense, the term 'or' is a conjunction indicating an alternative between different things or actions." <u>Zoss v. Schaefers</u>, 598 N.W.2d 550 (S.D. 1999).  The use of the conjunction "or" in § 83 by the Legislature indicates that three alternatives exist for instituting a private cause of action: violation of the statute, or violation of a rule, or violation of an order under the statute.  Thus, the court finds that a private right of action exists under South Dakota for violation of SDCL 37-5A-66(7) without a prior order of the director.

This interpretation of the South Dakota Franchise Act is consistent with the Eighth Circuit opinion in <u>Arnott v. American Oil Co.</u>, 609 F.2d 873, 883 (8th Cir. 1979), wherein the court noted:

24

S.D. Compiled Law 37-5A-66(7) prohibits unfair or inequitable terms or conditions in franchise agreements and unfair or inequitable practices by the franchisor. . . . The South Dakota statute indicates that in South Dakota unfair or inequitable practices by a franchisor will not be tolerated.  South Dakota law therefore indicates that the franchisor and franchisee of a service station operation are involved in a fiduciary franchise relationship whereby the parties should act with good faith toward each other.  Judge Nichol, during an informal discussion of Amoco's motion for a directed verdict, indicated it was his view that South Dakota, in enacting the 1974 Franchise Act, 'was codifying what was really the common law in South Dakota, anyway.'

Id. at 883.  Arnott involved a private dispute between a franchisor and franchisee and not merely an administrative remedy.

In light of the basic principles of statutory interpretation, the plain language of the Act, and the prior Eighth Circuit holding in Arnott, the court finds that LCE is not entitled to judgment as a matter of law on the violation of the state franchise claim.  Pinnacle does have a private right of action based on the South Dakota Franchise Act.

**E.  Trademark Cancellation**

Pinnacle seeks cancellation of LCE's trademark for "Hot n' Ready" pursuant to 15 U.S.C. §§ 1054, 1064, and 1119.[2]  To successfully prosecute a petition for cancellation, the petitioner must plead and prove: (1) that it has

---

[2]Section 1054 authorizes the registration of collective marks, which are marks used by members of a cooperative, association or other group or organization to identify and distinguish goods or services of such members.  Quality Courts United, Inc. v. Quality Courts, Inc., 140 F. Supp. 341, 347 (M.D. Pa. 1956).

standing to petition in that it is likely to be damaged by the registration; and (2) that there are valid grounds why the registration should not continue to be registered.  3 McCarthy, J. Thomas, <u>McCarthy on Trademarks and Unfair Competition</u>, § 20:41 (2004).  <u>See also</u> <u>Herbko Int'l Inc. v. Kappa Books, Inc.</u>, 308 F.3d 1156, 1161 (Fed. Cir. 2002).  Section 1064 authorizes a petition to cancel the registration of a trademark within five years from the date of registration of the mark, or at any time if the trademark was obtained fraudulently.  15 U.S.C. §§ 1064(1), 1064(3).  Section 1119 grants jurisdiction over "any action involving a <u>registered</u> mark."  (Emphasis added).

LCE contends that Pinnacle has not yet obtained a trademark registration.  Because it has merely applied for a trademark registration in "Hot n' Ready," LCE claims there is no trademark registration to cancel. Section 1119 "assumes a properly instituted and otherwise jurisdictionally supportable action involving a <u>registered</u> mark." <u>Ditri v. Coldwell Banker Residential Affiliates, Inc.</u>, 954 F.2d 869, 873 (3[d] Cir. 1992) (citing 2 McCarthy, J. Thomas, <u>McCarthy on Trademarks and Unfair Competition</u>, § 30:32 (1984).  Similarly, § 1064 is limited to cancellation of registered marks, not trademark applications.

In its amended complaint, Pinnacle acknowledges that LCE applied for a trademark in "Hot n' Ready," submitted supplemental information to the U.S. Patent & Trademark Office in support of its application, and that it continues

26

its efforts to obtain a registered trademark.  It does not allege that LCE

obtained a trademark.  The court finds that LCE is entitled to judgment on the

pleadings because there is no trademark registration to cancel.  Accordingly, it

is hereby

ORDERED that plaintiff's motion for leave to amend the complaint

(Docket 40) is granted.

IT IS FURTHER ORDERED that defendant's motion for judgment on the

pleadings (Docket 20) is granted in part and denied in part as set forth herein.

IT IS FURTHER ORDERED that LCE shall file its brief on or before

**August 3, 2005**.  Pinnacle shall file its response on or before **August 18,**

**2005**, and LCE may file a reply brief on or before **August 26, 2005**.

Dated July 19,  2005.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE