IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
(SOUTHERN DIVISION)

| | |
|---|---|
| PINNACLE PIZZA COMPANY, INC., a South Dakota Corporation,<br><br>Plaintiff,<br>v.<br><br>LITTLE CAESAR ENTERPRISES, INC., a Michigan Corporation; LC TRADEMARKS, INC., a Michigan Corporation; and ILITCH HOLDINGS, INC., a Michigan Corporation,<br><br>Defendants. | Case No. 04-4170<br><br>SECOND AMENDED COMPLAINT |

For its second amended complaint Plaintiff states and alleges as follows:

**Parties and Jurisdiction**

1.

Plaintiff is a corporation formed and operating under the laws of South Dakota, with its principal place of business and chief executive office in Sioux Falls, South Dakota, and is therefore a citizen of the State of South Dakota.

2.

Defendant Little Caesar Enterprises, Inc., ("LCE") is a corporation formed and operating under the laws of Michigan, with its principal place of business and chief executive offices in Michigan, and is therefore a citizen of the State of Michigan.

3.

Defendant LC Trademarks, Inc., ("LCT") is a corporation formed and operating under the laws of Michigan, with its principal place of business and chief executive offices in Michigan, and is therefore a citizen of the State of Michigan.

4.

Defendant Ilitch Holdings, Inc., ("IHI") is a corporation formed and operating under the laws of Michigan, with its principal place of business and chief executive offices in Michigan, and is therefore a citizen of the State of Michigan.

5.

The citizenship of Plaintiff is entirely diverse from the citizenship of the Defendants and the matter in controversy herein exceeds $75,000, exclusive of interest and costs.

6.

This Court has jurisdiction over the parties and subject matter of this action as provided by 28 USC § 1332 and by 15 USC §§ 1064 and 1119.

7.

The Court additionally maintains jurisdiction over LCE through an addendum to the terms of a franchise agreement between Plaintiff and LCE that provides "[A]ny provision which designates jurisdiction or venue or requires the Franchise Owner to agree to jurisdiction or venue in a forum outside of South Dakota is void with respect to any cause of action which is otherwise enforceable in South Dakota."

**Facts Common to all Counts**

8.

Little Caesar's is an international pizza franchise owned by LCE with several thousand corporately owned and independently owned franchise locations in the United States and abroad.

9.

LCT is a holder of trademarks used in the Little Caesar's business, including the trademark at issue in this case, and is owned and/or controlled by LCE and IHI.

10.

IHI owns and/or controls LCE and LCT and, on information and belief, employs the management personnel who engaged in the wrongful conduct described in this Complaint.

11.

LCE, LCT and IHI are all vicariously or directly liable for the wrongful acts and omissions described in this Complaint.

12.

All Defendants are persons liable to Plaintiff under SDCL 37-5A-84.

13.

On or about June, 1991 James Fischer and Mike Nichols formed Pinnacle Pizza Company, Inc., for the purpose of purchasing and operating a number of Little Caesar's pizza franchises in South Dakota.

14.

On June 7, 1991, Plaintiff, through Fischer and Nichols, entered into a franchise agreement with LCE, a copy of which is attached hereto as Exhibit 1 (the "Franchise Agreement"). The terms of the agreement were written solely by LCE and its agents. The Franchise Agreement is still in effect and Plaintiff continues to operate as one of LCE's franchisees.

15.

Under the Franchise Agreement Plaintiff has the right to own and operate a number of Little Caesar's franchises in South Dakota in exchange for paying LCE a franchise fee. Under the Franchise Agreement, Plaintiff-owned property includes its local advertising.

16.

In recognition of Plaintiff's ownership rights, Section XII(B) of the Franchise Agreement

provides that "LITTLE CAESAR may not use the original advertising materials created by Franchise Owner without its prior written consent." Such provision barred all uses whatsoever and extends beyond mere reproduction, performance, distribution or display.

17.

Section V of the Franchise Agreement, which is captioned PROPRIETARY MARKS AND INVENTIONS, discusses ownership of ideas developed to improve the Little Caesar system. Sub-part (F) of this section provides that "in no event shall advertising created by Franchise Owner be considered to be an improvement or modification of the LITTLE CAESAR System" that would be the property of LCE. By this language, ownership of local advertising belongs to the Plaintiff.

18.

Paragraph VIII of the Franchise Agreement also provides that "LITTLE CAESAR may, upon request, provide Franchise Owner with information for its consideration in establishing prices for the food products advertised, sold and offered for sale by Franchise Owner. The final decision as to all such matters of pricing however shall be made solely be Franchise Owner."

19.

The collective terms of the Franchise Agreement give Plaintiff the exclusive power to price and create advertising supporting its local product, and unambiguously prohibits LCE from using any of the advertising created by a franchisee without written consent.

20.

In 1997 while returning from a Little Caesar franchisee convention, James Fischer created and authored an advertising campaign by which all Pinnacle Pizza franchises would advertise for sale a medium pepperoni pizza for $4 dollars. In addition to the advertised price, this advertising would promote Plaintiff's pizzas as being ready to pickup the moment a

consumer entered one of Plaintiff's stores.

21.

Fischer's advertising contemplated promoting low cost and immediacy in one simple, novel, advertisement. Working off this formula, Fischer coined the phrase "Hot n' Ready" as an advertisement to sell pizzas.

22.

This created advertising is a protected property right of the Plaintiff under the Franchise Agreement.

23.

By no later than May 7, 1997, Plaintiff began advertising "Hot n' Ready" pizzas in the radio, in the newspapers, on shakerboards, leaflets and banners.

24.

The "Hot n' Ready" advertising quickly proved successful as sales from Plaintiff's franchises improved dramatically on days advertised as "Hot n' Ready".

25.

Over the next several years Plaintiff consistently advertised "Hot n' Ready" through a variety of mediums, using thousands of dollars of its own money to purchase radio time, print space and other miscellaneous media used to advertise "Hot n' Ready".

26.

Over the past several years, Plaintiff has experienced record sales throughout all of its local franchises on days advertised as "Hot n' Ready".

27.

At the time Plaintiff began advertising "Hot n' Ready", Little Caesar's as a franchise was performing very poorly, lagging far behind its major competitors in terms of per store average

sales. In fact, by 1999 business was so bad LCE shut the doors to over 300 of its franchise-owned stores in a single day.

28.

After watching Plaintiff's advertising succeed while the franchise as a whole continued to slump, LCE soon started paying close attention to Plaintiff's advertising.

29.

By 1998 LCE acknowledged Fischer as the author of "Hot n' Ready" and noted that Fischer had this advertisement down to a science.

30.

Over three years after Fischer first began advertising "Hot n' Ready" with frequency, LCE wrongfully began using Plaintiff's advertising at its franchise stores without seeking written consent from Plaintiff as required in Paragraph XII(D) of the Franchise Agreement.

31.

Without this contractually required authorization, LCE began test-marketing "Hot n' Ready" in its franchise stores with immediate financial success.

32.

Based on this success LCE implemented "Hot n' Ready" in all of its corporately owned stores in 2002.

33.

By wrongfully using Plaintiff's advertising in its corporate stores LCE experienced dramatic and unprecedented growth against its competition and dramatic and unprecedented growth in revenue and profits.

34.

LCE further wrongfully misappropriated Plaintiff's advertising without its consent by

implementing programs for use of "Hot n' Ready" advertising for all independently owned Little Caesar's franchisees, which resulted in dramatic and unprecedented growth in revenues and profits to LCE from increased royalty payments and other sources.

35.

In 2002 and 2003 LCE released corporate sales numbers suggesting an 18.2% growth rate. It is believed this growth rate is the highest in franchise history and is dramatically higher than the growth of Pizza Hut, Domino's Pizza, Papa John's and Defendant's other closest competitors.

36.

LCE secretly attributes its record growth to "Hot n' Ready". To deceive its competition, LCE has been publicly stating in trade publications that changes in its trade dress, changes in its cheese and sauce recipes and a manager certification program are collectively responsible for the recent boost in sales.

37.

In addition to veiling the success of "Hot n' Ready", LCE has also gone to great legal lengths to protect this advertisement as its own, even though the advertisement rightfully belongs to the Plaintiff. On several occasions LCE has sent, cease and desist correspondence to other entities that have advertised something akin to "Hot n' Ready". Each time LCE has threatened litigation under the Lanham Act, often representing that LCE's enforcement rights are based on a date of first use that is the Plaintiff's date of first use. Plaintiff was never told of these efforts and has never granted LCE permission to use Plaintiff's acquired common law trademark rights for its own benefit.

38.

On June 28, 2002, Defendant LCT, at the direction of LCE, applied for a trademark for

"Hot n' Ready", for LCE's use, representing to the USPTO that:

- "to the best of [its] knowledge and belief no other person, firm, corporation, or association has the right to use said mark in commerce. . . and these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both. . ."; and
- LCE's date of first use for "Hot n' Ready" is May 6, 1997 (referring to Plaintiff's date of first use).

In contrast to these representations, Plaintiff had a right to use "Hot n' Ready" to the exclusion of both LCE and LCT. This exclusion barred these Defendants from submitting a good faith application to the USPTO without Plaintiff's permission.

39.

On September 30, 2003, Defendant LCT, at the direction of LCE, submitted supplemental information to the USPTO in regard to its application, further representing that as of June 2002, LCE had sold more than 50,000,000 pizzas using Plaintiff's advertising.

40.

After being served with a Summons and Complaint in this matter LCE continued its efforts, through LCT, to obtain a registered trademark with the USPTO despite knowing that Plaintiff had contractual rights to its advertising, and knowing that Plaintiff's permission was a precondition to either LCT or LCE ever obtaining legitimate trademark rights in "Hot n' Ready". By maintaining this course of action these Defendants have now obtained a federal trademark, listed on the principal registry maintained by the USPTO (on information and belief, serial no. 76429517)in bad faith and in direct conflict with the common law and contractual property rights belonging to Plaintiff.

41.

These Defendants were only able to acquire trademark rights to "Hot n' Ready" by falsely and deceptively claiming Pinnacle's authorship as its own and using Pinnacle's date of authorship as its own, despite knowing this to be untrue.

42.

In addition to proceeding in bad faith with the USPTO, LCT and LCE have either advertised, acquired, or attempted to acquire, trademark rights to "Hot n' Ready" in many foreign countries, including, China, Sweden, Iceland, Saudi Arabia, Japan, Canada, Mexico and Bahrain, to name a few. Like in the United States, none of these uses of the "Hot n' Ready" advertisement in conjunction with the sale of Little Caesar's pizza has ever been authorized by Plaintiff.

43.

LCE has used, licensed use, and continues to license use, of the advertisement "Hot n' Ready" to others, for profit, without obtaining Plaintiff's written permission as required by the Franchise Agreement. In fact, LCE's use has gone far beyond mere reproduction, performance, distribution or display.

44.

LCE's promise to pay the reasonable value of use of "Hot n' Ready" is implied by the words of the Franchise Agreement, the nature of LCE's use, and its conduct in relying on Plaintiff's own first use to establish priority of right, to prevent unauthorized use, to establish claimed legal protection and to charge others for use, and otherwise such as, for example, set forth in attached Exhibit 2.

45.

Defendants LCT and IHI have assisted Defendant LCE in the wrongful acts and

omissions described herein, conspired with such defendant and otherwise participated in and benefited from the foregoing such as to be joint and severally liable to Plaintiff.

46.

By virtue of the franchise relationship LCE owes to Plaintiff a special duty, confidential, fiduciary or otherwise, and of good faith and fair dealing, beyond that implied in ordinary contracts.

**Count I**

47.

Plaintiff states and re-alleges the above facts and allegations as though fully set forth herein.

48.

LCE's unauthorized use of Plaintiff's advertising in direct contradiction to its promise never to do so, constitutes a breach of the above-described agreement, contracts and duties, express and implied-in-fact.

49.

By its breach LCE has deprived the Plaintiff of its bargained-for right to control the creative license of the "Hot n' Ready" advertising and Plaintiff has thereby sustained significant damage and detriment for which LCE is liable. LCE is further contractually liable to Plaintiff in restitution for all the profits it has unconscionably acquired by breaching its contract with the Plaintiff.

**Count II**

50.

Plaintiff states and re-alleges the above facts and allegations as though fully set forth herein.

51.

As a condition to doing business as a franchise in South Dakota, LCE is obligated to deal openly and honestly with the Plaintiff in all matters relevant to the parties' relationship and to refrain from any practice that would be unfair or inequitable toward the Plaintiff.   Pursuant to SDCL 37-5A-84 and SDCL 37-5A-5(10) these provisions apply equally to any natural person, corporation, limited liability company, partnership, trust, or other legal entity who directly or indirectly controls or acts on behalf of a liable franchise.

52.

By taking Plaintiff's contractually defined property without permission and then using that property to sell millions of pizzas, sustain record profits through its theft and later acting in bad faith to trademark this theft, LCE has acted in a manner that in unfair and inequitable to the Plaintiff for which LCE, LCT and IHI are liable under South Dakota's Franchise Act.

53.

Pursuant to SDCL 37-5A-66(7) and 37-5A-83, Plaintiff is entitled to damages and other relief deemed appropriate by this Court.

54.

In addition, Plaintiff is entitled to attorney fees', costs and disbursements and treble damages pursuant to SDCL 37-5A-85.

**Count III**

55.

Plaintiff states and re-alleges the above facts and allegations as though fully set forth herein.

56.

Plaintiff has a contractually defined property right in "Hot n' Ready" to the exclusion of LCE. LCE has exercised control and dominion over that property in a manner that is unconscionable and inconsistent with Plaintiff's rights. LCE has further converted this right through a relationship of trust and confidence despite a statutory mandate forbidding LCE from exploiting its relationship with the Plaintiff for personal gain.

57.

As a result of this tortious conduct, LCE has gained untold millions of dollars in profits and revenue from its use of the converted property, both in the United States and abroad. As a result of LCE's tortious conduct, Plaintiff is entitled to an accounting of all revenues and profits LCE has obtained through its conversion.

58.

By tortiously converting Plaintiff's property, LCE is charged in equity to hold that property in trust for the Plaintiff's benefit, entitling Plaintiff to receive all profits LCE has made on account of its tortious conversion.

59.

By their relationship to LCE, LCT and IHI are also liable to Plaintiff for this conversion.

**Count IV**

60.

Plaintiff states and re-alleges the above facts and allegations as though fully set forth herein.

61.

The development of the "Hot n' Ready" advertising promotion is the product of Plaintiff's investment of time, skill and money.

62.

By taking Plaintiff's advertising which is a property right granted by contract, LCE, LCT and IHI have gained an unfair advantage and have wrongfully benefited from Plaintiff's toil.

63.

This wrongful conduct constitutes a misappropriation which has caused Plaintiff detriment and damage and from which these Defendants have unjustly profited in a manner that is unconscionable.  Plaintiff is entitled to disgorge Defendants' profits resulting from this tortious misappropriation, or alternatively, to receive reasonable royalties from these Defendants from their continued wrongful appropriation.

**Count V**

64.

Plaintiff states and re-alleges the above facts and allegations as though fully set forth herein.

65.

Defendants LCE, LCT and IHI have unjustly profited from the unlawful taking of the advertising created by Plaintiff despite a statutory obligation to refrain from unfair and inequitable practices toward a franchisee.

66.

By its unfair and inequitable appropriation of Plaintiff's property, LCE, LCT and IHI have experienced an unjustified financial windfall under circumstances where it would be inequitable for these Defendants to keep such profit.

**Count VI**

67.

Plaintiff states and re-alleges the above facts and allegations as though fully set forth herein.

68.

South Dakota law provides by statute that it is a Class 1 misdemeanor to intentionally use the common law mark of another by affixing that mark to a product or container, without permission and with knowledge of the senior user's mark.

69.

South Dakota law further provides by statute that any such party who intentionally uses the mark of another shall additionally be punished in a civil action by a penal sum in the amount of one hundred dollars for each and every offense.

70.

LCE has intentionally and willfully used Plaintiff's mark as defined by South Dakota statute on a number of occasions without permission and is subject to punishment for each and every unauthorized use in the penal sum described by state law.

**Count VII**

71.

Plaintiff states and re-alleges the above facts and allegations as though fully set forth herein.

72.

LCE, LCT and IHI's conduct in converting and misappropriating Plaintiff's advertising, as described above, is willful, malicious, fraudulent, oppressive and in reckless disregard of Plaintiff's rights.

73.

Accordingly, Plaintiff is entitled to recover punitive or exemplary damages in amounts to be determined by the jury.

**Count VIII**

74.

Plaintiff states and re-alleges the above facts and allegations as though fully set forth herein.

75.

As a result of its contractual relationship with Plaintiff, LCE was aware that Plaintiff's written authorization was a contractual precondition that LCE had to satisfy before ever obtaining trademark rights to Plaintiff's advertising through LCT.

76.

LCE has also conceded on multiple occasions that its right to trademark "Hot n' Ready" is based on Plaintiff's use of that phrase in conjunction with Plaintiff's advertising.

77.

Despite LCE's awareness of Plaintiff's common law right to "Hot n' Ready" based both on the date of first use and a contractual property right, LCE nevertheless illegitimately obtained registered rights to this mark by negotiating in bad faith to acquire the registration of the mark through LCT.

78.

Congress has given a federal district court jurisdiction to cancel all trademarks registered with the United States Patent and Trademark Office that are obtained in bad faith.

79.

Through LCT, LCE has by acquired in bad faith the rights to a federally registered mark despite knowing that Plaintiff's has senior rights based on first use and a contractual property right, both of which impedes a good faith acquisition of the mark.

80.

LCT's registration with the USPTO for "Hot n' Ready" (serial no. 76429517) should therefore be cancelled and the assignment from a third party dated November 30, 2004, and its subsequent publication by the USPTO should be declared null and void.

*Wherefore*, Plaintiff respectfully requests this Court enter judgment against the Defendants as follows:

   a.   That Plaintiff be awarded a money judgment for damages in an amount to be determined by a jury;

   b.   For treble damages;

   c.   For punitive or exemplary damages in amounts to be determined by the jury at trial;

   d.   For a statutory penalty in the amount of one hundred dollars for each wrongful use of Plaintiff's mark;

   e.   That Plaintiff be awarded costs and disbursements incurred herein as a result of Defendants' conduct, including reasonable attorneys fees';

   f.   That Plaintiff be awarded equitable relief and other relief in the form of an accounting, that an equitable trust be established whereby Plaintiff is entitled to disgorge the Defendants' wrongful profits and that the LCT's registered trademark be cancelled due to the bad faith acquisition of that mark; and

g.  For such other, further and additional relief as the Court deems fair and equitable under the circumstances.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Dated this 26th day of September, 2006, at Sioux Falls, South Dakota.

                                                CADWELL SANFORD DEIBERT
                                                & GARRY, LLP

By: ___Shawn M. Nichols_____
        Steven W. Sanford
        Stephen C. Landon
        Shawn M. Nichols
        200 E.10th Street, Suite 200
        Sioux Falls, SD 57105
        Telephone: (605) 336-0828
        Telecopier: (605) 336-0636
        Attorneys for the Plaintiff