UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PINNACLE PIZZA COMPANY, INC., | ) | CIV. 04-4170 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | MOTION TO QUASH |
| LITTLE CAESAR ENTERPRISES, INC., | ) | |
| ILITCH HOLDINGS, INC., and | ) | |
| LC TRADEMARKS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

The district court, the Honorable Karen E. Schreier, Chief Judge, referred to this court for decision the Motion to Quash Subpoena [Docket No. 148] filed by Plaintiff Pinnacle Pizza Company, Inc. (hereinafter "Pinnacle"). As this is a non-dispositive motion, it is within this court's authority to resolve. See 28 U.S.C. § 636(b)(1)(A).

**FACTS**

On June 7, 1991, Pinnacle and Defendant Little Caesar Enterprises, Inc. entered into a franchise agreement in which Pinnacle agreed to act as franchiser of a number of Little Caesar pizza restaurants in South Dakota. Pinnacle alleged in its complaint that its president, James Fischer, invented the advertising slogan "Hot n' Ready," and that defendants thereafter unlawfully used that slogan. Based on this alleged conduct, Pinnacle brought this action against defendants, asserting state law claims of breach of contract, violation of the duty of good faith and fair dealing, conversion, misappropriation of an advertising idea, unjust enrichment, and imitation of trademark. See Pinnacle Complaint [Court's Docket No. 1].

During the discovery phase of this litigation, James Fischer was deposed on October 24, 2006. Opposing counsel asked Mr. Fischer during this deposition whether he had taken any steps to see if anyone else in the food business had used the phrase "Hot and Ready." Mr. Fischer testified that he had hired a patent attorney, Troy Leonard, to do research regarding Pinnacle's ability to assert trademark rights over the phrase. Opposing counsel then asked what the result of Mr. Leonard's research was. In response, Mr. Fischer stated:

> It was their opinion that the words "Hot and Ready" were too general, and I think they thought it would be an expensive–or too expensive for me anyway to pursue getting it trademarked. They– I don't think they understood what it was doing for my business and the value of it as a trademark.

See Deposition of James Fischer at 86 (attached as Exhibit A to Affidavit of James Fischer) [Court's Docket No. 150].

Pinnacle did not object to the testimony or move to strike the answer from the record. On May 9, 2007, defendants served a deposition subpoena on Mr. Leonard, requesting him to bring certain communications to his deposition that Pinnacle had previously identified as privileged. Pinnacle moved to quash the deposition subpoena. In support of its motion, Pinnacle argued that Mr. Fischer's deposition statement was not a privileged communication and, if it was, the disclosure did not waive the attorney-client privilege because the disclosure was inadvertent.

## DISCUSSION

**A.     South Dakota Law Determines Questions of Privilege**

State law determines both the existence and scope of the attorney-client privilege in diversity actions. Fed. R. Evid. 501; Gray v. Bicknell, 86 F.3d 1472, 1482 (8th Cir. 1996). Since this court has jurisdiction over the parties solely by reason of diversity of citizenship of the parties, 28 U.S.C. § 1332, the state law of privilege applies to the issue of whether the statement

was privileged and whether that privilege has been waived. Id. The South Dakota state courts have addressed voluntary disclosure of information and the resulting waiver of privilege. See generally State v. Rickabaugh, 361 N.W.2d 623, 625 (S.D. 1985); State v. Catch the Bear, 352 N.W.2d 640, 647 (S.D. 1984). The South Dakota Supreme Court has not addressed the degree to which inadvertent disclosure of privileged information constitutes a waiver. Where a state court has yet to decide an issue, this court places itself in the position of the South Dakota Supreme Court and attempts to predict how that institution would likely resolve the matter. See Gray, 86 F.3d at 1482-83; B.B. v. Continental Ins. Co., 8 F.3d 1288, 1291 (8th Cir. 1993).

     A client may assert the attorney-client privilege in order to prevent disclosure of confidential communications made between the client and the client's attorney for the purpose of facilitating the rendition of professional legal services. See SDCL § 19-13-3. A client may waive the privilege if he voluntarily discloses or consents to disclose any significant part of the privileged matter. Catch the Bear, 352 N.W.2d at 647. The burden of establishing that a particular communication is protected by the attorney-client privilege rests with the party asserting the privilege. Rickabaugh, 361 N.W.2d at 624. The burden of establishing waiver of the lawyer-client privilege is on the party asserting the waiver. See Catch the Bear, 352 N.W.2d at 647. Once a communication is deemed to come within the attorney-client priviledge, courts are loathe to invade that priviledge. See 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 2017, p. 258 (2d ed. 1994) ("Once communications are deemed to fall within the attorney-client privilege, those communications are 'zealously protected,' ").

**B.    The Communication Between Mr. Fischer and Mr. Leonard was Privileged**

Under South Dakota law, a privileged communication has four elements: (1) it is confidential and (2) communicated for the purpose of rendering or receiving legal services to a (3) client who is (4) in one of five statutorily-enumerated relationships.  SDCL § 19-13-3.  Pursuant to the definitions laid out in SDCL § 19-13-3, the communication disclosed by Mr. Fischer was privileged.

The communication between Mr. Fischer and Mr. Leonard was confidential.  A communication is confidential if it is not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.  SDCL § 19-13-2.  Here, the communications between Mr. Fischer and his attorney, Mr. Leonard, were not intended to be disclosed to third persons, as there was an expectation on the part of Mr. Fischer and Pinnacle that their attorney would keep the communication private.  See Knecht v. Weber, 640 N.W.2d 491, 497 (S.D. 2002).  The communication, thus, should be considered confidential and privileged.

The statement disclosed by Mr. Fischer, a client, was communicated to him by his attorney for the purpose of providing legal services, as Mr. Fischer testified that he had retained Mr. Leonard, an attorney, to perform trademark research.  See Deposition of Jim Fischer at page 86, (found in Affidavit of Jim Fischer at Exhibit A) [Docket No. 150].  Therefore, the four elements necessary to constitute privileged communication are met.  SDCL § 19-13-3.

Although Pinnacle argues that the disclosed communication was not privileged because it was a restatement of public fact, Pinnacle fails to support its argument with authority.  South

Dakota case law does specify some matters that are *not* subject to privilege, including facts concerning the existence of a lawyer-client relationship, Catch the Bear, 352 N.W.2d at 645, and answers given by an attorney pursuant to opposing witness impeaching its client's reputation for veracity based on alleged attorney statements, Johnson v. Ebensen, 160 N.W. 847, 848-49 (S.D. 1916). However, there is no state case law that would indicate that a communication is not privileged because it is based on public information.

Clients cannot refuse to disclose *facts* which their attorneys conveyed to them and which the attorneys obtained from independent sources. Hickman v. Taylor, 329 U.S. 495, 508 (1947); Sedco Intern, S.A. v. Cory, 683 F.2d 1201, 1205 (8th Cir. 1982). The relevant disclosure here, however, is not one of fact, but rather, is one of *opinion*. Therefore, the communication disclosed by Mr. Fischer was a privileged, confidential communication. The court must then consider whether Pinnacle waived the privilege.

### C.     Mr. Fischer Did Not Waive the Privilege

The attorney-client privilege may be waived either expressly or by implication. Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985); Sedco Intern, S.A., 683 F.2d at 1206; Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974). The court concludes that Mr. Fischer did not waive the privilege during his deposition because the disclosure was inadvertent. Although defendants contend that only accidental disclosures should be considered inadvertent, such as the mistaken inclusion of privileged documents with other discovery products, the South Dakota courts would not likely conclude that Mr. Fischer had consented to a waiver, and thus, would conclude that the waiver was inadvertent. See Rickabaugh, 361 N.W.2d at 625.

In <u>Rickabaugh</u>, the defendant made statements to a polygrapher who had been hired by his lawyer. Id. at 624. After the polygrapher told Rickabaugh and his attorney in a joint meeting that Rickabaugh had failed the polygraph examination, the attorney said to the polygrapher, in Rickabaugh's presence, to tell two third parties "what happened." Id. Rickabaugh did not object or protest upon hearing his attorney's instructions to the polygrapher. Id. The South Dakota Supreme Court held that, under these facts, Rickabaugh's statements to the polygrapher were protected by the attorney-client privilege and that Rickabaugh had not waived that privilege by failing to object to his attorney's directive to the polygrapher to "tell what happened." Id. at 625. The <u>Rickabaugh</u> decision suggests that the South Dakota Supreme Court requires a direct and affirmative statement or action from the client agreeing to waive the privilege before that privilege will be deemed waived.

Three positions have developed regarding the effect of inadvertent disclosure of privileged information: (1) the lenient approach; (2) the strict approach; and (3) the "middle of the road" or <u>Hydraflow</u> approach. See <u>Gray</u>, 86 F.3d at 1483. Although the Eighth Circuit has not decided which approach to apply when privileged communication has been inadvertently disclosed, it has recognized that the three approaches have developed in other jurisdictions which have faced this question. See <u>Pavlik v. Cargill, Inc.</u>, 9 F.3d 710, 713 (8th Cir. 1993).

The lenient approach provides that the attorney-client privilege is waived only if the client knowingly and intentionally relinquished the privilege. <u>Gray</u>, 86 F.3d at 1483. Here, under the lenient approach, Mr. Fischer's inadvertent disclosure would not constitute a waiver of the attorney-client privilege because, in disclosing the privileged communication, he did not intend to give up the privilege. Though this approach is consistent with South Dakota's

6

expressed preference of encouraging the client to communicate with its attorney by protecting the attorney-client privilege, see Schutterle v. Schutterle, 260 N.W.2d 341 (S.D. 1977); State Highway Commission v. Earl, 143 N.W.2d 88 (S.D. 1966), it also fails to provide incentive for lawyers and clients to exercise caution when dealing with privileged material. Gray, 86 F.3d at 1483. Therefore, the South Dakota state courts would be less likely to apply the lenient approach.

The strict approach, if applied, would result in a waiver of attorney-client privilege for all of Pinnacle's privileged communications relating to the same subject matter as the disclosed opinion of Mr. Leonard, regardless if the disclosure was intentional or otherwise. See id. In light of the South Dakota courts holding that the purpose underlying attorney-client privilege is to encourage a client to communicate freely with counsel without fear of disclosure, see Schutterle, 260 N.W.2d 341; Earl, 143 N.W.2d 88, the South Dakota courts would most likely reject the strict approach.

The middle-of-the-road approach set forth in Hydraflow applies a balancing test to each case to determine whether the behavior that resulted in disclosure is excusable, and thus, whether it fails to constitute a waiver. See Gray, 86 F.3d at 1483; Hydraflow, Inc. v. Enidine Inc., 145 F.R.D. 626, 637 (W.D.N.Y. 1993). The factors considered under the Hydraflow approach are: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in light of the extent of document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosures; (4) the promptness of measures taken to remedy the problem; and (5) whether justice is served by relieving the party of its error. Hydraflow, Inc. v. Enidine Inc., 145 F.R.D. 626, 637 (W.D.N.Y. 1993). Under the Hydraflow approach, an inadvertent disclosure may still

constitute a waiver, and thus, carelessness by attorney and client is discouraged. The consideration of the five factors, however, allows for flexibility, as the inadvertent disclosure does not necessarily result in the imposition of a waiver of the privilege if, upon inquiry, the court finds that the inadvertent disclosure is excusable. See Gray, 86 F.3d at 1484.

This court believes that the South Dakota state courts would adopt the Hydraflow approach, given that the approach simultaneously provides the court with the simultaneous ability to both discourage carelessness and to encourage the client to freely communicate with the attorney without fear of an automatic waiver of privilege. A recent decision by the United States District Court for the District of South Dakota supports this conclusion by applying the Hydraflow approach in a federal question case. See Pucket v. Hot Springs School District, 239 F.R.D. 572, 586 (D.S.D. 2006).

In addition, this court's decision to apply the Hydraflow approach enjoys support from the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 26(b)(5)(B). In 2006, a new provision was added to Rule 26(b)(5) dealing with assertions of privilege. See id. Under the new provision, inadvertent disclosure of privileged information does not automatically result in waiver of the privilege. Id. Although the impetus for the new addition to Rule 26(b)(5) were concerns over the disclosure of electronic discovery (see Advisory Committee Notes, Rule 26, 2006 Amendment), the amendment is drafted broadly enough to encompass all types of discovery. See Fed. R. Civ. P. 26(b)(5)(B) ("If *information* is produced in discovery that is subject to a claim of privilege . . . .") (emphasis supplied).

Based on the five Hydraflow factors, the court concludes that Mr. Fischer did not waive the attorney-client privilege that protects the communications between Pinnacle and Mr.

Leonard.  The first factor weighs in favor of Pinnacle because it employed reasonable precautions to prevent inadvertent disclosure of privileged material.  The record does not reflect that the privileged communication was disclosed to any third parties other than opposing counsel during the deposition.  This indicates that reasonable precautions were being exercised.

The second and third factors also weigh in Pinnacle's favor: the statement made during Mr. Fischer's deposition was the only inadvertent disclosure of privileged material, and therefore, the number of inadvertent disclosures is limited to one.  Furthermore, the disclosure was not extensive, as the amount of privileged material that was disclosed by his statement was limited to only the vague opinion of Mr. Leonard that the terms "Hot and Ready" were "too general."

The fourth factor, which considers whether Pinnacle acted promptly, is the only factor which weighs against Pinnacle.  As defendants point out in their brief, Pinnacle did not object to Mr. Fischer's testimony or move to strike his answer from the record until seven months had elapsed and a subpoena for Mr. Leonard's testimony had been served.

Regarding the fifth and final factor, the interests of justice weigh in favor of determining that Pinnacle did not waive the attorney-client privilege.  Justice does not demand that the attorney-client privilege be waived in this case.  Defendants do not argue that allowing the privilege to remain attached to the communication would prevent the resolution of issues in this case or result in prejudice to defendants.

After consideration of the five <u>Hydraflow</u> factors, the court concludes that Mr. Fischer's inadvertent disclosure of privileged communication does not constitute a waiver of the attorney-client privilege between Pinnacle and Mr. Leonard.

## CONCLUSION

Pinnacle's motion to quash the deposition subpoena will be granted. Although Mr. Fischer made a statement that constituted a privileged, confidential communication, the disclosure of such information did not constitute a waiver because it was inadvertent. The court, after considering the five <u>Hydraflow</u> factors, concludes that the attorney-client privilege remains attached to the disclosed communication.

Accordingly, it is hereby

ORDERED that Pinnacle's Motion to Quash Subpoena [Docket No. 148] is granted.

Dated July 3d, 2007.

BY THE COURT:

/s/ *Veronica L. Duffy*
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE